STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Plaintiff,

                                   Case No. 08-10367

v.

DEANNA HAWKINS,

        Defendant.

_____/

**OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL REGARDING SUBPOENAS ISSUED AGAINST
ATTORNEY LISS; (2) GRANTING PLAINTIFF'S MOTION TO COMPEL REGARDING
SUBPOENAS ISSUED AGAINST THE LISS FIRM; AND (3) GRANTING IN PART
AND DENYING IN PART THIRD-PARTY WITNESSES' MOTION FOR PROTECTIVE
ORDER**

Pending before the court are three motions, all concerning the production of

documents by third-party witnesses Liss, Seder, & Andrews, P.C. ("the Firm"), and

attorney Arthur Y. Liss ("Liss"). Plaintiff served two subpoenas on the Firm and two

subpoenas on Liss. Plaintiff has filed two motions for the production of documents, one

concerning both subpoenas issued against the Firm, and the other concerning one of

the subpoenas issued against attorney Liss. Liss and the Firm have filed a motion for a

protective order concerning all four subpoenas. The court will grant Plaintiff's motion

regarding the subpoenas issued against the Firm; it will grant in part and deny in part

Plaintiff's motion concerning the subpoenas issued against Liss; and it will grant in part

and deny in part the third-party witnesses' motion for a protective order.

## I. BACKGROUND

Plaintiff's theory of the case is that Defendant defrauded it of hundreds of thousands of dollars by claiming reimbursement for attendant health care services that she never provided.  For several years, Defendant represented to Plaintiff that she was providing twenty-four hour attendant health to her niece, Fecchia Hawkins.  As a result, Plaintiff paid nearly $350,000 to Plaintiff for attendant health care claims.  Defendant was represented by the Firm and Liss during the period that she was submitting the attendant-care claims to Plaintiff.  By August, 2005, at the latest, neither the Firm nor Liss represented Defendant.  (Pl.'s Mot. to Compel Regarding Jan. 5, 2009, Ex. 8, Hawkins's Dep. at 18-22.)  Defendant then hired attorney Dean Greenblatt, who appeared before the court in this case.  The court granted Greenblatt's motion to withdraw on October 16, 2009.

The subject of the pending motions are four subpoenas issued by Plaintiff.

*Subpoenas issued against the Firm*

(1) On September 10, 2008, Plaintiff issued a subpoena ("Firm Subpoena No. 1") to the Firm demanding the production of four categories of documents: (1) "Copies of any and all communication with the Family Independence Agency regarding Deanna Hawkins"; (2) "Copies of any and all cancelled checks issued to Deanna Hawkins or any other party on behalf of Fecchia Hawkins"; (3) "Copies of any and all communications with anyone other than Fecchia Hawkins regarding Fecchia Hawkins"; and (4) "Copies of the fee agreement between your firm and Deanna Hawkins and/or Fecchia Hawkins." (Third-Party Witnesses' Mot. Br. [Dkt. # 86] Ex. A.)

(2) On September 17, 2008, Plaintiffs issued a second subpoena ("Firm

Subpoena No. 2") to the Firm demanding the production of a single category of documents: "Any and all documentation provided to you by Deanna Hawkins which reflects attendant care services provided by Deanna Hawkins to Fecchia."  (Third-Party Witnesses' Mot. Br. [Dkt. # 86] Ex. B.)

In response to these subpoenas, the Firm produced a number of documents, but it also claimed that many responsive documents were privileged.  Accordingly, the Firm produced a five-page privilege log claiming the protection of the attorney-client privilege for (1) communications between the Firm and Defendant; (2) communications between the Firm and the law offices of Samuel Bernstein (the attorney who referred Defendant to the Firm); (3) the fee agreement between the Firm and Defendant; and (4) an amendment to the representation agreement between the Firm and Defendant.

*Subpoenas issued against attorney Liss*

(1) On December 16, 2008, Plaintiff issued a subpoena ("Attorney Subpoena No. 1") to Liss demanding four categories of documents: (1) "Copies of any and all communication with the Family Independence Agency regarding Deanna Hawkins"; (2) "Copies of any and all cancelled checks issued to Deanna Hawkins or any other party on behalf of Fecchia Hawkins"; (3) "Copies of any and all communications with anyone other than Fecchia Hawkins regarding Fecchia Hawkins"; and (4) "Copies of the fee agreement between your firm and Deanna Hawkins and/or Fecchia Hawkins."  (Third-Party Witnesses' Mot. Br. [Dkt. # 86] Ex. D.)

(2) On September 17, 2008, Plaintiffs issued a second subpoena ("Attorney Subpoena No. 2") to Liss demanding the production of a single category of documents: "[C]opies [of] any and all communications, whether written, electronic or otherwise, with

Attorney Dean. G. Greenblatt regarding Deanna Hawkins, Fecchia Hawkins or State Farm." (Third-Party Witnesses' Mot. Br. [Dkt. # 86] Ex. E.)

In response to these two subpoenas, attorney Liss did not produce any documents. Liss objected to Attorney Subpoena No. 1 on the grounds that it was "a back door effort" to acquire the same materials sought in Firm Subpoena No.1. Liss objected to and provided a privilege log concerning Attorney Subpoena No. 2 claiming the attorney-client privilege, the work product doctrine, and the "common interest and joint defense privilege." (Third-Party Witnesses' Mot. Br. [Dkt. # 86] at 3.)

## II. DISCUSSION

### A. Waiver

Plaintiff argues that Liss[1] waived his right to object to the discovery requests made in Attorney Subpoena No. 2 by failing to timely object. A producing party or third-party witness must serve written objections to a subpoena within Rule 45's specified time to respond. *Am. Elec. Power Co. V. United States*, 191 F.R.D. 132 (S.D. Ohio 1999). Failure to do so risks waiving the right to object. *Id.* Both Plaintiff and Liss agree that Liss failed to serve timely objections to the subpoenas. The parties also agree that the failure to serve timely waivers does not constitute waiver if one of three exceptions apply: (1) the subpoena is overbroad; (2) the producing party is acting in good faith; or (3) the attorneys for the producing and requesting parties were communicating concerning compliance with the subpoena before the objections were served. The second exception, at least, applies in this case. Liss's failure to serve

---

[1] In its motion to compel regarding Attorney Subpoena No. 1, Plaintiff incorrectly asserts that the subpoena was directed to the Firm.

timely objections to the subpoena at issue here is the result of understandable confusion, rather than bad faith. Plaintiff presented several subpoenas, some of which overlap, on the Firm and on Liss. Moreover, on at least one occasion, Plaintiff incorrectly served Liss personally rather than his counsel. Liss reasonably argues that his failure to timely respond to Attorney Subpoena No. 2 was because he confused it with a previous subpoena about which he had already communicated with Plaintiff. Nothing suggests that Liss's counsel's explanation is not true, and the fact that Plaintiff itself has confused the subpoenas in its briefing supports the notion that Liss or Liss's counsel may have done the same. The court will therefore reject Plaintiff's argument that Liss waived his objections to Attorney Subpoena No. 2.

### B. Canceled Checks

Plaintiff requested, from both Liss and the Firm, copies of checks paid by the Firm to Defendant after it received payment from Plaintiff for Defendant's provision of attendant care. The third-party witnesses object to producing the checks on the basis that they are not relevant to Plaintiff's claims.

The scope of discovery extends to any matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b). Evidence is relevant if it has *any* tendency to prove or disprove the existence of any material fact. Fed. R. Evid. 401 (emphasis added). The checks can be probative of the legal fees charged by the firm, because the Firm is likely to have subtracted its fee from the gross amount received from Plaintiff before issuing a check for the net amount to Defendant. Plaintiff's case theory is that Liss and the Firm aided Defendant in defrauding Plaintiff. If the third-party witnesses were conspiring with Defendant to defraud Plaintiff, then it might be reasonably theorized that

5

Liss and the Firm would charge Defendant for services at a rate higher than the market rate to compensate for the risk of being discovered engaging in illegal activity. Charging unusually high rates could therefore be probative of a conspiracy between Liss, the Firm, and Defendant to defraud Plaintiff. *See United States v. Shalash*, 108 F. App'x 269, 285 (6th Cir. 2004) (low prices probative of knowledge that goods were stolen). Accordingly, the checks are relevant and discoverable.

### C. The Firm's and Liss's Claims of Privilege

In response to the subpoenas issued against them, the Firm and Liss produced privilege logs asserting the attorney-client privilege, the work product doctrine, and the "joint defense/common interest privilege." The privilege logs list particular privileges for particular documents, so the court's analysis will be based on the privileges actually asserted for the particular documents in the logs.

Because Plaintiff has met its burden of establishing that the crime fraud-exception applies to the documents responsive to the Firm subpoenas, the court will order the Firm to produce those documents. Plaintiff does not argue that the documents responsive to Liss's subpoenas are subject to the crime-fraud exception and Liss has made an initial showing that the documents are privileged. The court will, however, order Liss to supplement his privilege log and produce the documents for *in camera* inspection so that the court may evaluate Liss's privilege assertion.

### 1. Subpoenas Issued to the Firm

Although the Firm has made a showing that the documents in its privilege logs fall under the attorney-client privilege, Plaintiff has met its burden of establishing the crime-fraud exception. In response to the two subpoenas, the Firm produced a privilege

6

log asserting the attorney-client privilege, and no other privilege, for all documents listed. Those documents fall into the following categories: letters between Defendant and the Firm; letters between the Firm and the Bernstein law firm (the law firm that referred Defendant to the Firm); Defendant's fee agreement with the Firm; and communications by Defendant to the Firm concerning the attendant care.

Plaintiff argues that the attorney-client privilege does not apply. The Firm, however, appears to have met the initial burden of showing the attorney-client privilege can apply to much of the material described in its privilege log. The Federal Rules of Evidence govern the discoverability of privileged materials. Fed. R. Evid. 1101; Fed. R. Civ. P 26(b). And pursuant to Federal Rule of Evidence 501, the state law of privileges applies to evidence relevant to establishing an element of any claim or defense based in state law. Plaintiff's complaint alleges only state law claims, and the state law of privileges therefore governs this case. The Michigan law of privileges is common law. Mich. R. Evid. 501.

> The attorney-client privilege attaches to communications made by a client to his or her attorney acting as a legal adviser and made for the purpose of obtaining legal advice on some right or obligation. The purpose of the privilege is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed. The privilege is personal to the client, who alone can waive it.

*People v. Waclawski*, __ N.W.2d __ (Mich. Ct. App. 2009). The privilege attaches to communications made by the client *and* the client's agents who are acting to obtain legal advice for the client. *Grubbs v. K Mart Corp.*, 411 N.W.2d 477, 480 (Mich. 1987). Moreover, the privilege is not limited to fully consummated attorney-client relationships; it applies also to communications between a prospective client consulting with an

attorney. *Devich v. Dick*, 143 N.W. 56, 58 (Mich. 1913).

Plaintiff argues that the attorney-client privilege is not applicable to many of the materials in the Firm's privilege log because they are not "communications." Plaintiff asserts that the requested documents bearing on the provision of attendant care, submitted to the Firm by Defendant, are evidence of the care provided by Defendant rather than communications made for the purpose of obtaining legal advice.

Regardless of the merits of this argument, it does not appear, from its privilege log, that any of the withheld materials are documentary evidence other than communications. The material in the Firm's privilege log, with the exception of the fee agreement, is described as letters and communications between Defendant and the Firm, who was representing Defendant at the time. Specifically, the documents are described as being letters between the Firm and Defendant and communications made by Defendant to the Firm regarding the provision of the attendant care. The attorney-client privilege therefore may apply to these documents.

The Firm indicated that several communications with the Bernstein law office were responsive to the Firm Subpoenas. In the privilege log and in its briefing, the Firm claims that these communications are not discoverable, but rather are protected by the attorney-client privilege. Defendant, it is asserted, initially consulted with Bernstein about reimbursement for the attendant care. According to the Firm, after Defendant decided to hire the Firm, Bernstein contacted it to pass on information about the case and generally refer the matter to the Firm. Accordingly, the Bernstein firm was acting as Defendant's agent for the purpose of obtaining legal advice concerning the disputed claims. And any communications between the two firms regarding Defendant may fall

under the scope of the attorney-client privilege.

Nevertheless, even if the attorney-client privilege applies, the crime-fraud exception allows discovery of the materials. "The crime-fraud exception to the attorney-client privilege is predicated on the recognition that where the attorney-client relationship advances the criminal enterprise or fraud, the reasons supporting the privilege fail." *People v. Paasche*, 525 N.W.2d 914, 917 (Mich. Ct. App. 1994). The crime-fraud exception applies where the plaintiffs "show that there is a reasonable basis to (1) suspect the perpetration or attempted perpetration of a crime of fraud and (2) that the communications were in furtherance thereof." *Id.* at 918. "This showing must be made without reference to the allegedly privileged material." *Id.* "The crime-fraud exception applies even where the attorney or the accountant is unaware that advice is sought in furtherance of the improper purpose." *Id.* at 918 n.6. Further, it is "advice [that] refers to future, not past, wrongdoing" to which the crime-fraud exception applies. *Id.* at 917-18.

The first element of the exception only requires a reasonable basis to *suspect* fraud. This standard is therefore a low one, because it requires only a basis to suspect rather than a basis to believe. Plaintiff has produced sufficient evidence to meet this standard. Fecchia, in a signed statement, revealed that Defendant had not lived with her and had not provided care for her since she was nineteen years old. (Pl.'s Mot. to Compel Regarding Firm Subpoenas [Dkt. # 85] Ex. 9.) The Firm also admits that there is evidence that Fecchia told a social worker that Defendant had not lived with her since 2003. (Third-Party Witnesses' Mot. Br. [Dkt. # 86] at 8.)

The Firm and Liss respond that these statements are hearsay, and not enough

because Fecchia is not a credible witness. They cite inconsistencies between these statements and her deposition testimony and they argue that her brain injury reduces her credibility. The third-party witnesses suggest that the more credible evidence is the Defendant's testimony because it is consistent. The court expresses no opinion as to whether Fecchia's testimony is more or less credible than Defendant's. It need not do so. The relevant standard is not whether the testimony is ultimately to be believed but it is whether the testimony is sufficient to allow a basis to suspect fraud. Fecchia's testimony is more than enough to allow such a suspicion.

The second element of the crime-fraud exception is also met in this case. The Firm's representation of Defendant was expressly for the purpose of interacting with and submitting future claims for payment to Plaintiff. It is these claims that are alleged to be fraudulent, according to Fecchia's statements. Defendant's use of counsel to submit the claims was therefore in furtherance of Defendants alleged fraud, viz. submitting false attendant care claims to Plaintiff.[2] There is sufficient evidence to meet the crime-fraud exception for the documents in the Firm's privilege log.

## 2. Subpoenas Issued against Liss

In response to the subpoenas issued to him, Liss produced no documents, but only a privilege log listing emails and correspondence between Greenblatt and Liss or between Greenblatt and various other unidentified individuals. The documents were listed as being protected by: (1) the work product doctrine, the "joint defense/common interest" privilege, and the attorney client privilege; (2) only the work product doctrine

---

[2] The court need express no view as to whether Liss or the Firm had knowledge of the fraud. No such finding is required to find that the crime-fraud exception applies. *Paasche*, 525 N.W.2d at 918 n.6.

and the "joint defense/common interest" privilege; or (3) only the "joint defense/common interest" privilege.

> The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process. *See Hickman v. Taylor*, 329 U.S. 495, 510-14 (1947). The work-product doctrine is a procedural rule of federal law; thus, Federal Rule of Civil Procedure 26 governs this diversity case. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). Rule 26(b)(3) protects (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative." *Id.*

*In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) In an affidavit supporting the third-party witnesses's motion, Liss stated that he provided Greenblatt with documents describing "strategy matters for defending the current litigation." As Liss previously represented Defendant and anticipated that he was a potential defendant in this case or one based on the same transactions, his claim of the work product doctrine seems supported. The court will therefore not order Liss to produce these documents. It will, however, order Liss to produce the alleged work-product documents for *in camera* inspection so that the court may review the substance of his claim that they are protected.[3]

Liss's claim of the "joint defense/common interest" is, however, more difficult. The case law on the so-called common interest privilege or joint defense privilege is complicated and contradictory. The common law, federal and state, is replete with

---

[3] Although the crime-fraud exception also applies to the work-product doctrine, it is not applicable regarding the documents identified in Liss's privilege log. These documents were created in 2008 and 2009, well after the Defendant's last insurance claim. Being generated after the last claim had been submitted, they do not appear capable of furthering the fraud. Also, the court need not decide whether Liss's claim of the attorney-client privilege is justified, because every document that he claims is protected by the attorney-client privilege is also claimed to be protected by the work-product doctrine.

examples of opinions conflating distinct expansions of the standard attorney-client privilege, and in some cases courts have gone so far as to invent a new privilege rather than expanding the attorney-client privilege.  24 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5493 n.91.  Liss appears to be seeking two separate expansions of the attorney-client privilege, neither of which amounts to anything more than a exception to the standard rule that the attorney-client privilege is waived when the communication is revealed to a third party.

The joint-defense doctrine, also called the co-client privilege, allows communications between one client (e.g., a defendant) and his attorney to be shared with a co-defendant without waiving the privilege where both are represented by the same attorney.  *Id.*; Restatement (Third) of the Law Governing Lawyers § 75.  There is some support in Michigan case law for the joint defense or co-client privilege.  *See Denby v. Dorman*, 246 N.W. 206 (Mich. 1933) (implied holding).  Here, the communications were between attorney Greenblatt and various individuals.  Since Greenblatt never represented the Firm, the co-client privilege is inapplicable.

The common interest exception may apply where the parties are represented by separate attorneys but share a common legal interest.

> If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged under §§ 68-72 that relates to the matter is privileged as against third persons.  Any such client may invoke the privilege, unless it has been waived by the client who made the communication.

Restatement § 76.  The parties cite no Michigan law, and the court is aware of none, recognizing or rejecting the expansion of the privilege to include a common interest

12

exception, and it appears that the Michigan Law has not yet decided the issue. Katharine Traylor Schaffzin, "*An Uncertain Privilege: Why the Common Interest Doctrine Does Not Work and How Uniformity Can Fix It*," 15 B.U. Pub. Int. L.J. 49, 61 n.39 (2005).

Accordingly, the court is called upon to decide whether state law would recognize the common interest exception without the benefit of the state court's ruling on the matter. "If the issue has not been directly addressed, we must 'anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court.'" *Pennington v. State Farm Mut. Auto. Ins. Co*, 553 F.3d 447, 450 (6th Cir. 2009). Expanding the attorney-client privilege by adopting a common interest exception would increase communication between colitigants, but would simultaneously decrease the flow of information to the court and thereby inhibit the court's ability to find the truth. Numerous state and federal courts have weighed these competing policies and determined to adopt the exception. *See, e.g.*, Schaffzin*, supra*, at 61 n.39 (citing cases from twelve states recognizing the common interest exception). The wide acceptance of common interest exception, and the absence of its rejection, suggests that the Michigan Supreme Court would recognize it.

Under Michigan law, however, the scope of the attorney-client privilege is narrow, and this must inform the court's analysis as to whether to adopt the exception. As mentioned above, courts have not been consistent in their treatment of the common interest exception. Some courts have imputed to it a wide scope, even to the extent of establishing what amounts to a new privilege. 24 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5493 n.93 (citing ten cases). Other courts have

13

treated it narrowly, as a mere exception to a circumstance in which the privilege would have been deemed waived. *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997). The Restatement's formulation of the rule takes such an approach. Under the Restatement, privileged communications between an attorney and client are not waived when they are revealed to an allied lawyer, provided that the person asserting the privilege shows that the attorney-client privilege applies to the underlying attorney-client communication. After the underlying communication is determined to be privileged, the common interest exception's other requirements must be met, e.g., the communication must be related to a common litigation interest. The requirement that there be an underlying privileged communication is the reason that the common interest exception should not apply to unrepresented parties: "A person who is not represented by a lawyer and who is not himself or herself a lawyer[4] cannot participate in a common-interest arrangement." Restatement § 76 cmt. d. Balancing the wide acceptance of the common interest exception and Michigan's acceptance of the co-client privilege against Michigan's clear directive to construe the attorney-client privilege narrowly, the court holds that the Michigan Supreme Court would likely adopt the narrow version of the common interest privilege as described in the Restatement.

The third-party witnesses' theory is that the Firm is in a common interest arrangement with Defendant. Liss argues that the Firm's common interest with Defendant is demonstrated by Plaintiff's suggestion that the Firm might have played a

---

[4] The reason why the Restatement distinguishes between a pro se litigant without a law license and a pro se attorney is unclear. Because the third-party witnesses assert that the *Liss Firm*, rather than *attorney Liss*, was in the common interest arrangement with Defendant, the court need not address the issue of whether a pro se attorney should be allowed to participate in a common interest arrangement.

role in the fraud that forms the basis of this case. Plaintiff has suggested in court filings and in statements made in court that the Firm is a potential defendant in litigation based on Defendant's allegedly fraudulent claims. (Pl.'s Mot. to Compel Re: Subpoena to Liss and Asociates 7, 1/5/2009.) The common interest exception, by the Restatement's terms and as recognized by numerous courts, applies to potential litigants in a case as well as actual litigants. Because the Firm and Defendant shared the risk of litigation and liability arising from the same set of transactions, namely, Defendant's allegedly fraudulent claims to Plaintiff, they shared a common interest in litigation.

But that is not enough to allow the application of the common interest exception—there must be some underlying privileged communication. For a privileged communication to exist, there must be an attorney-client relationship. Liss's argument then turns on whether there was an attorney-client relationship between the Firm and the individuals communicating with Greenblatt. The Firm is a professional corporation. As a general rule under Michigan law corporations may be represented by counsel and may take advantage of the attorney-client privilege. *See Leibel v. Gen. Motors Corp.*, 646 N.W.2d 179, 184-85 (Mich. Ct. App. 2002). Indeed, corporations cannot appear pro se in Michigan courts, so corporations are often required to hire counsel. And in a case where a law firm organized as professional corporation has hired outside counsel to represent it, the firm could, without doubt, take advantage of the attorney-client privilege. Here there is no evidence that the Firm hired attorney Liss to represent it—indeed, Liss is a named partner of the Firm. Accordingly, the issue is whether a law firm's attorney member automatically acts as the firm's attorney when he or she performs legal services for the firm. There is a special relationship between an attorney

15

and the law firm for which the attorney works. Attorneys are constantly considering the legal ramifications of the firm's actions. For example, a member attorney may have to consider the risk that the firm's actions might expose it to potential liability, such as legal malpractice. Accordingly, a member attorney's role is often similar to that of in-house counsel. Because Michigan law recognizes that a corporation's in-house counsel's communications may be privileged, *id.*, it would likely recognize that a law firm's attorney's communications may be privileged insofar as the attorney is providing legal advice to the firm.

Here, Liss was acting as the Firm's *de facto* in-house counsel regarding the potential liability to Plaintiff. According to Liss and the Firm, Liss was communicating with Greenblatt in an effort to deal with the Firm's potential liability to Plaintiff for Defendant's allegedly fraudulent claims. The Firm may therefore take advantage of the attorney-client privilege regarding Liss's provision of legal advice to the Firm. Having found that there is an underlying attorney-client privilege, the Firm may also participate in a common interest arrangement with Defendant. The common interest arrangement, however, may only be claimed if the communications are being shared between the clients' attorneys. Greenblatt and Liss may participate in a common interest arrangement because they were attorneys representing clients with a common litigation interest. But attorney Liss's privilege log includes several communications between Greenblatt and unidentified individuals. Liss may withhold communications between the unidentified individuals only on the condition that he identify the individuals corresponding with Greenblatt as attorneys with the Firm or agents of attorneys with the Firm. To accomplish this, Liss must file an updated privilege log. Moreover, the court

16

will order Liss to produce the documents that are asserted to be protected by the common-interest exception for *in camera* inspection to determine the applicability of the exception.

## D. Deposition of Attorney Liss

Liss objects to Plaintiff's request to depose him. Other than a bald assertion that the deposition is an attempt to get at privileged information, he offers no justification for the objection. In fact, Liss may well have information that is not privileged. Defendant may have made comments to him in the presence of a third party, or Liss may possess potential physical evidence about which Plaintiff could elicit information and then subpoena. Liss may not avoid being deposed without justification. He may, of course, record objections during the deposition and refrain from answering questions to the extent that such may be appropriate under discovery rules.

## III. CONCLUSION

In accordance with reasons and conclusions stated above,

IT IS ORDERED THAT:

(1) **Regarding the subpoenas issued against the Firm:** The witnesses must produce on or before **June 17, 2010**, to the Plaintiff, all documents identified in the "Privilege Log Relative to Subpoenas Dated September 10, 2008 and September 17, 2008."

(2) **Regarding the subpoenas issued against Liss:** The witnesses need not produce *to Plaintiff* any of the documents identified in the "Privilege Log Relative to Communication with Dean Greenblatt." But for the for the documents identified as communications between unidentified individuals and Greenblatt and asserted as being protected by the "joint defense/common interest," Liss must file, on or before **June 17, 2010**, an updated privilege log identifying the unidentified individuals as the Firm's attorneys or their agents. Furthermore, the witnesses must produce on or before **June 17, 2010**, to the court for *in camera* inspection, all documents identified in the "Privilege Log Relative to Communication with Dean

Greenblatt."

IT IS FURTHER ORDERED that "Plaintiff's Motion to Compel Regarding January 5, 2009 Subpoena to Liss & Associates" [Dkt. # 84] is GRANTED IN PART and DENIED IN PART pursuant to the terms described above.

IT IS FURTHER ORDERED that "Plaintiff's Motion to Compel Regarding September 24, 2008 and October 1, 2008 Subpoenas to Liss & Associates" [Dkt. # 85] is GRANTED.

IT IS FURTHER ORDERED that "Third Party witnesses Liss, Seder, & Associates, P.C. and Arthur Y. Liss's Renewed Motion for Protective Order" [Dkt. # 86] is GRANTED IN PART and DENIED IN PART pursuant to the terms described above.


s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 4, 2010


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 4, 2010, by electronic and/or ordinary mail.


s/Lisa G. Wagner_____
Case Manager and Deputy Clerk
(313) 234-5522