UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,

v.                                               Case No. 08-10367

DEANNA HAWKINS,

    Defendant.
                                          /

**OPINION AND ORDER (1) GRANTING DEAN G. GREENBLATT'S MOTION FOR A PROTECTIVE ORDER; (2) DENYING GREENBLATT'S MOTION TO QUASH; AND (3) DENYING GREENBLATT'S MOTION FOR COSTS**

Pending before the court are third-party Dean Greenblatt's "Motion for Protective Order," "Motion to Quash," and "Motion for Costs." The motions are in response to Plaintiff's subpoena on Greenblatt, which asks for the production of "all documents relating to your retention and representation" of Defendant and "[a]ll documents relating to [Defendant's] bankruptcy proceedings." (Greenblatt Mot. Ex. 1.) Greenblatt claims that seven responsive documents are protected by the attorney-client privilege. Plaintiff responds that the documents should be produced regardless of the privilege because the crime-fraud exception applies.

On August 17, 2010, the court held a hearing on the motion; Plaintiff and Greenblatt attended. Defendant did not. At the hearing, the court ordered Plaintiff to file a supplemental brief further addressing its claim that the crime-fraud exception

should apply to communications between Greenblatt and Defendant. Plaintiff filed an eighteen-page brief on August 23, 2010. For the reasons stated below, the court will grant the motion for a protective order and deny the motion to quash and the motion for costs.

## I. BACKGROUND

As stated in previous orders, Plaintiff's theory of the case is that Defendant defrauded it of hundreds of thousands of dollars by claiming reimbursement for attendant health care services that she never provided. For several years, Defendant represented to Plaintiff that she was providing twenty-four hour attendant health care to her niece, Fecchia Hawkins. As a result, Plaintiff paid nearly $350,000 to Plaintiff for attendant health care claims. Defendant was represented by Liss, Seder, and Andrews, LLC ("the Liss Firm") and Arthur Liss during the period that she was submitting the attendant-care claims to Plaintiff. By August, 2005, at the latest, neither the Liss Firm nor Liss represented Defendant. Defendant then hired attorney Dean Greenblatt, who appeared before the court in this case. The court granted Greenblatt's motion to withdraw on October 16, 2009.

The pending motion is one of a series of discovery motions filed by Plaintiff, Liss, Greenblatt, and the Liss Firm. Like the other motions, this one centers on the attorney client privilege and the applicability of the crime-fraud exception.

## II. STANDARD

> The attorney-client privilege attaches to communications made by a client to his or her attorney acting as a legal adviser and made for the purpose of obtaining legal advice on some right or obligation. The purpose of the privilege is to allow a client to confide in his or her attorney secure in the

2

knowledge that the communication will not be disclosed. The privilege is personal to the client, who alone can waive it.

*People v. Waclawski*, 780 N.W.2d 321, 359 (Mich. Ct. App. 2009).

Nevertheless, even if the attorney-client privilege applies, the crime-fraud exception allows discovery of the materials. "The crime-fraud exception to the attorney-client privilege is predicated on the recognition that where the attorney-client relationship advances the criminal enterprise or fraud, the reasons supporting the privilege fail." *People v. Paasche*, 525 N.W.2d 914, 917 (Mich. Ct. App. 1994). The crime-fraud exception applies where the plaintiffs "show that there is a reasonable basis to (1) suspect the perpetration or attempted perpetration of a crime of fraud and (2) that the communications were in furtherance thereof." *Id.* at 918.

### III. DISCUSSION

As an initial matter, Greenblatt raises several procedural defects with the subpoena: it was sent to the wrong address, it required the production of documents at a location more than 100 miles from Greenblatt, there was no offer to pay copying costs, and there was an inadequate time to respond. It appears that these concerns have been abated[1] (Greenblatt's Mot. Ex. 2; Pl.'s Resp. 14), and, without further argument from Greenblatt, the court will not quash the subpoena based on these asserted defects.

---

[1] Correspondence sent from Greenblatt to Plaintiff's counsel indicates that Plaintiff accommodated Greenblatt's concerns regrading these four issues.

In response to the subpoena, Greenblatt produced 103 pages of documents.[2] He also produced a privilege log claiming that seven emails between himself and David W. Anderson are protected under the attorney client privilege. Greenblatt argues that the crime-fraud exception does not apply because the alleged fraud, the subject of this lawsuit, occurred before his representation of Defendant.

Plaintiff responds to this timing issue by asserting that "Greenblatt is part of an ongoing fraudulent scheme . . . to conceal the true facts underlying [Plaintiff's fraud] claims." (Pl.'s Resp. 14.) In support of this contention, Plaintiff argues that there is ample evidence to suggest that Liss and the Liss Firm conspired to defraud Plaintiff out of hundreds of thousands of dollars in insurance claims for attendant care that Defendant did not provide. Plaintiff further maintains that, after it initiated this lawsuit against Defendant to recover the money, Liss and the Liss Firm paid Greenblatt to represent Defendant in this case. Plaintiff's theory is that Liss and the Liss Firm controlled Greenblatt's representation and the progression of this lawsuit. Moreover, Plaintiff maintains that Liss, the Liss Firm, and Greenblatt improperly paid for and orchestrated Defendant's bankruptcy filing in Texas to stall this litigation. Plaintiff

---

[2] The parties also dispute the scope of the subpoena's request for documents. Plaintiff argues that Greenblatt has interpreted the subpoena's scope too narrowly and asks the court to order Greenblatt to produce documents consistent with its interpretation of the subpoena. The court declines this invitation. This is Greenblatt's motion to, inter alia, quash the subpoena. It is not Plaintiff's motion to compel. Such a motion is not appropriately raised in a responsive pleading. The local rules and the court's practice guidelines require that motions and responses be accompanied by a separate brief. E.D. Mich. LR 7.1(b); Practice Guidelines for Judge Robert H. Cleland, http://www.mied.uscourts.gov/Judges/guidelines/index.cfm?judgeID=12. Under no circumstances may a motion be included within or tacked onto a response or a reply. See E.D. Mich. LR 7.1(b).

argues that Liss and the Liss Firm were acting to protect themselves and prevent their own liability, rather than to further Defendant's interests. Plaintiff argues that Greenblatt's representation of Defendant was therefore in violation of the Michigan Rules of Professional Responsibility, because he failed to get Defendant's consent to Liss's and the Liss Firm's payment of her legal fees, because Liss and the Liss Firm controlled the legal representation, and because Greenblatt was acting in the interests of Liss and the Liss Firm, which are inconsistent with those of Defendant. The court will assume that Plaintiff has produced enough evidence, under the strictures of the crime-fraud exception, to support its factual contentions because Plaintiff's argument nonetheless fails.

The crime-fraud exception applies only where the "advice from an attorney refers to future, not past, wrongdoing." *Paasche*, 525 N.W.2d at 917. Greenblatt's main argument is that, under this rule, the crime-fraud exception cannot apply because his representation of Defendant began after the completion of the alleged fraud against Plaintiff. Plaintiff counters by suggesting that the activities of Defendant, Liss, the Liss Firm, and Greenblatt in arranging for and participating in the defense of this lawsuit comprise ongoing wrongdoing, viz. the concealment of the fraudulent attendant care claims. Plaintiff argues that the ethical violations (which have been described by Plaintiff's counsel in hearing as "tantamount to fraud" or possibly criminal) committed by Liss, the Liss Firm, and Greenblatt, according to Plaintiff, are enough to trigger the crime-fraud exception. The court rejects this argument.

Deanna Hawkins is the defendant in this case and it is her attorney-client privilege that Plaintiff seeks to pierce. Under Michigan law, which controls the law of

privileges in this diversity case, "[t]he crime-fraud exception to the attorney-client privilege is predicated on the recognition that where the attorney-client relationship advances the criminal enterprise or fraud, the reasons supporting the privilege fail." *Paasche*, 525 N.W.2d at 917. Further, the attorney-client privilege is personal to the client, and only the client can waive it. *Ravary v. Reed*, 415 N.W.2d 240 (Mich. Ct. App. 1987) (quoting *Passmore v. Passmore's Estate*, 16 N.W. 170 (1883)). Because it is the client's privilege to waive, it follows that the crime-fraud exception should only operate to destroy the privilege because of the client's intent to use the attorney client relationship to advance a crime or fraud. The Fourth Circuit has held, for example, that it is "the concealment or cover-up of its criminal or fraudulent activities *by the client*, the holder of the privilege rather than the attorney's lack of knowledge of the criminal or fraudulent activity or activities of the client, controls the court's analysis of whether the attorney-client privilege may be successfully invoked." *In re Grand Jury Proceedings ("Bank Case")*, 102 F.3d 748, 751 (4th Cir. 1996) (emphasis added). The *Bank Case* court reasoned that

> Inasmuch as today's attorney-client privilege exists for the benefit of the client, not the attorney, *it is the client's knowledge and intentions that are of paramount concern* to the application of the crime-fraud exception; the attorney need know nothing about the client's ongoing or planned illicit activity for the exception to apply. It is therefore, irrelevant, for purposes of determining whether the communications were made "in furtherance of" [the client's] criminal activity, that [the attorneys] may have been in the dark about the details of that activity.

*Bank Case*, 102 F.3d at 751 (quoting *In re Grand Jury Proceedings ("Corporate Tax Evasion Case")*, 87 F.3d 377 (9th Cir. 1996)) (internal citations omitted) (emphasis added). As the court has noted in a previous order, Michigan courts have adopted this

6

same rule: "[t]he crime-fraud exception applies even where the attorney or the accountant is unaware that advice is sought in furtherance of the improper purpose." *Paasche*, 525 N.W.2d at 918 n.6. The *Paasche* court cited a Second Circuit case, which held that "advice in furtherance of [crime or fraud] is socially perverse, and the client's communications seeking such advice are not worthy of protection." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984).

Accordingly, the crime-fraud exception under Michigan law centers on the client's knowledge and intentions, rather than the attorney's. The exception requires that a *client's communications* seeking advice be in furtherance of a crime or fraud. This is why the attorney's knowledge of the crime or fraud is irrelevant in determining whether the exception applies. The converse of this should be true: an attorney's unilateral actions furthering a crime or fraud should not, at least in situations that put the client in peril, trigger the exception.

The facts of this case require, in particular, the application of this rule. Plaintiff argues that Greenblatt's, Liss's, and the Liss Firm's improper conduct surrounding the representation of Defendant in this case justifies an extension of the crime-fraud exception to cover communications regarding this lawsuit. Plaintiff wisely does not argue that there would be "an ongoing fraudulent scheme . . . to conceal" if Defendant would have hired an independent attorney who represented her ethically and simply maintained a zealous defense. To maintain such an argument would be to argue that the attorney-client privilege dissolves whenever there is reason to suspect that a client committed a fraudulent act. This must be rejected, because such would be the case

anytime a defendant denies the merits of a fraud allegation, and the crime-fraud exception would swallow the privilege rule. Instead, the gravamen of Plaintiff's argument is that Liss and the Liss Firm improperly paid Greenblatt's fees and costs, that Liss and the Liss Firm improperly interfered with Greenblatt's professional judgment and the attorney client relationship, and that Greenblatt was acting in Liss's and the Liss Firm's interests instead of Defendant's. According to Plaintiff, it is this improper, unethical conduct, which is an ongoing fraudulent scheme to conceal and which provides the basis for the crime-fraud exception.

All of these alleged ethical violations result in potential harm to Defendant. The rules of professional responsibility that were allegedly violated are all rules of conflict of interest enacted to protect clients by ensuring that an attorney acts in the client's interest rather than in another's. If Plaintiff's theory is correct, the situation would be one of considerable peril for Defendant. Under the theory, her defense would have been controlled by Liss and the Liss Firm, whose primary motivation would have been to protect themselves, potentially at Defendant's expense. In such a situation, it would be a perverse rule of law to compound the damage done by the allegedly unethical lawyers by allowing their actions to despoil Defendant's attorney-client privilege.

Plaintiff, however, cites several cases which support its position that the unilateral actions of an attorney may void the attorney client privilege. The cases cited by Plaintiff are easily distinguished from the facts of this case. *In re Impounded Case (Law Firm)*, 879 F.3d 1211 (3rd Cir. 1989) held that the crime-fraud exception applied even though the crime and fraud were the result of the attorneys' unilateral actions. The *Law Firm* court, however, limited the exception to materials "relating solely to possible

8

criminal activity of the law firm." *Id.* at 1213. Further, the *Law Firm* court found it important that the trial court's in camera review of the materials to ensure that they were "pertinent to criminal prosecution of the attorney alone." *Id.* at 1214. Specifically, the trial court examined the particular documents to determine whether they "would implicate the client in the very criminal activity for which legal advice was sought." *Id.* at 1212. This restriction was sensible in *Law Firm*, because the attorneys were the subject of the investigation. It is not sensible here. Such a restriction here would mean that Plaintiff would be entitled to documents that were used by Greenblatt, Liss, and the Liss Firm to further some crime or fraud only insofar as the documents do not implicate Defendant. But this is a suit against Defendant alone, so documents that do not bear on her culpability are irrelevant and beyond the scope of discovery. *CSX Transp., Inc. v. Gilkison*, No. 05-cv-202, 2009 WL 1528190 (N.D.W. Va. May 29, 2009), is likewise distinguishable. *CSX* involved a law suit against a law firm, its lawyers, and a doctor employed to examine their clients to support their asbestosis claims. Again, the clients were not the litigants to the suit and the crime-fraud exception did not put them in peril.

In short, this is a case against Defendant and the attorney client privilege that Plaintiff seeks to pierce is hers. Greenblatt's, Liss's, and the Liss Firm's allegedly improper conduct may allow the piercing of this privilege, but not where the only defendant is the client, and where the only relevant material, and therefore the only discoverable material, would be material that inculpates her.

On August 16, 2010, the court ordered Greenblatt to produce the allegedly privileged documents for in camera inspection to verify the applicability of the privilege. Having examined all of the documents, the court finds that they all contain attorney-

client privileged communications between attorneys who were both representing Defendant when the communications were made.

Finally, because the court has already determined that the crime-fraud exception applies to discovery materials in this case, (6/4/2010 Order), Plaintiff's appeal to it, while ultimately misguided, was substantially justified and the court will not award costs and expenses. See Fed. R. Civ. P. 37(a)(5)(A)(ii).

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Greenblatt's "Motion for Protective Order" [Dkt. # 103] is GRANTED. Greenblatt need not produce the seven documents asserted as being protected by the attorney-client privilege.

IT IS FURTHER ORDERED that Greenblatt's "Motion to Quash" [Dkt. # 103] is DENIED.

IT IS FURTHER ORDERED that Greenblatt's "Motion for Costs" [Dkt. # 103] is DENIED.

    s/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated: February 10, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 10, 2011, by electronic and/or ordinary mail.

    s/Lisa Wagner
    Case Manager and Deputy Clerk
    (313) 234-5522