# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,

v.                                                Case No. 08-10367

DEANNA HAWKINS,

    Defendant.
                                                    /

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY WITNESSES' MOTION TO QUASH AND GRANTING PLAINTIFF'S MOTION TO FILE THE LISS DEPOSITION UNDER SEAL

Before the court are two motions: third-party witnesses Arthur Liss and Liss, Seder & Andrews, PC's ("the Liss Firm") motion to quash two subpoenas issued by Plaintiff and Plaintiff's motion to file Arthur Liss's deposition transcript under seal.[1]  For the following reasons, the court will order Plaintiff to submit a proposed order to modify the subpoenas, and thus will grant in part and deny in part the motion to quash.  The court will grant Plaintiff's motion to file the Liss deposition under seal.

## I. BACKGROUND

In what has become a myriad of discovery orders, the court has discussed the background and history of this case, and so only recounts here the facts most apposite to the pending motions.

---

[1] Plaintiff's response to the motion to quash purports to move to compel compliance with the subpoenas.  Combining filings in this manner is not appropriate.  See footnote 2 of the court's opinion resolving the motions on the Greenblatt subpoena.

Plaintiff sued Defendant on January 25, 2008, alleging that Defendant defrauded Plaintiff of hundreds of thousands of dollars using falsified insurance claims, most of which related to attendant care benefits ("AC Benefits"). Plaintiff asserts that Defendant claimed AC Benefits that were not provided by Defendant to Fecchia Hawkins, Defendant's niece and Plaintiff's insured. The court entered a "Preliminary Scheduling Order" on June 19, 2008, after a scheduling conference, setting a deadline for filing dispositive motions. On September 11, 2008, the court issued a scheduling order, which set a January 12, 2009 deadline for discovery, and a February 12, 2009 deadline for dispositive motions, among other deadlines. The court granted Plaintiff's motion to extend discovery by 90 days on December 23, 2009, and entered an amended scheduling order on January 6, 2009, setting a deadline for completion of discovery on April 13, 2009.

On March 25, 2009, the court stayed and administratively closed the case because Defendant filed for bankruptcy in the Eastern District of Texas. The stay was lifted on October 15, 2009, after the bankruptcy court had lifted the automatic stay in the case. In that order, the court stated: "A status conference will . . . be necessary to determine what changes, if any, should be made to the current scheduling order and to address how to proceed regarding the motions that were outstanding when the stay was imposed." The court held a telephone conference on November 9, 2009. In a November 10, 2009 order, the court set a schedule for renewing motions after the case resumed. In the months that followed, the court entertained a variety of discovery-related motions.

The subpoenas at issue in Defendant's motion seek: "(1) All documents relating to Fecchia Hawkins; and (2) All documents relating to Deanna Hawkins' (a) attendant care claims, (b) guardianship and conservatorship for Fecchia Hawkins; and (c) bankruptcy proceedings." One subpoena ("Liss Subpoena") directs Arthur Liss to produce the above documents, and the other ("Firm Subpoena") directs the Liss Firm to produce those documents.

Liss and the Liss Firm seek to quash the subpoenas as unreasonable on three grounds: 1) they were issued after the April 13, 2009 discovery deadline; 2) they are overbroad; and 3) compliance would place an undue burden on Liss and the Liss Firm. Plaintiff responds that 1) the subpoenas are reasonably calculated to lead to the discovery of relevant evidence; 2) any claimed attorney-client privilege is eviscerated by the crime-fraud exception; 3) there is no undue burden; and 4) discovery has not closed.

The court held a hearing on the motion to quash on September 1, 2010. For the reasons that follow, the court will grant the motion in part and deny it in part, and will order Plaintiff to submit to the court a proposed order trimming the subpoenas in a manner not inconsistent with this opinion. The court will grant Plaintiff's motion to file the Liss deposition transcript under seal.

## II. STANDARDS

### A. Review of Scope of a Subpoena

The Federal Rules of Civil Procedure permit discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity

3

> and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Evidence is admissible for relevance purposes if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. A court that issues a subpoena in discovery must quash or modify it where the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv).

## B. Attorney-Client Privilege

In this diversity action, the district court applies federal procedural law and state substantive law. *See Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The Federal Rules of Evidence are procedural for the purposes of that distinction, *id.*, but the Rules themselves "direct federal courts sitting in diversity to apply state evidentiary laws in three narrow contexts," *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 n.1 (6th Cir. 2007); *see* Fed. R. Evid. 302 (presumptions); Fed. R. Evid. 501 (privileges); Fed. R. Evid. 601 (witness competency). "[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed. R. Evid. 501.

The attorney-client privilege in Michigan

4

> attaches to communications made by a client to his or her attorney acting as a legal adviser and made for the purpose of obtaining legal advice on some right or obligation. The purpose of the privilege is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed. The privilege is personal to the client, who alone can waive it.

*People v. Waclawski*, 780 N.W.2d 321, 359 (Mich. Ct. App. 2009).

### C. Crime-Fraud Exception

Even if the attorney-client privilege would otherwise apply, the crime-fraud exception allows for discovery of communications in furtherance of a crime or fraud. "The crime-fraud exception to the attorney-client privilege is predicated on the recognition that where the attorney-client relationship advances the criminal enterprise or fraud, the reasons supporting the privilege fail." *People v. Paasche*, 525 N.W.2d 914, 917 (Mich. Ct. App. 1994). The crime-fraud exception applies where the plaintiffs "show that there is a reasonable basis to (1) suspect the perpetration or attempted perpetration of a crime or fraud and (2) that the communications were in furtherance thereof." *Id.* at 918. "'The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reasons for the protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing, but to future wrongdoing*.'" *Id.* at 917 (quoting *United States v. Zolin*, 491 U.S. 554, 562-63 (1989)) (emphasis in original) (internal quotations omitted).

### III. DISCUSSION

### A. Close of Discovery

As the court noted at the September 1 hearing, Liss and the Liss Firm's arguments regarding the expiry of discovery are unpersuasive. While Liss and the Liss Firm are correct that the last scheduling deadline formally entered was April 13, 2009, this case was automatically stayed in March 2009 pending resolution of Defendant's bankruptcy proceedings. After the stay was lifted, the court made clear both in the status conference held on November 9, 2009, and through entertaining discovery motions, that discovery had not yet closed. Moreover, the evolution of this case has demonstrated a substantial need for further discovery, and there is no evidence that Liss and the Liss Firm have been prejudiced by the continuing discovery.

### B. Undue Burden

Liss and the Liss Firm next argue that the motion to quash should be granted, or at the very least the subpoena modified, because complying with the subpoena would place an undue burden on the firm. They note that "[t]he case file takes up six feet of shelf space and consists of thousands of pages of paper. It would require hours upon hours of work just to create a privilege log due to the broad scope of documents that State Farm seeks." (Witnesses' Mot. 2-3.) They cite Plaintiff's past "oppresive" conduct seeking the "excesses" of extensive discovery, and suggest that Plaintiff is using this litigation as a vehicle for investigating and retaliating against the Liss Firm, averring that the Liss Firm has repeatedly bested Plaintiff in the courtroom on behalf of its clients, and observing that Defendant is "sick, destitute, and uncollectible." (*Id.* at 3.)

6

In response, Plaintiff argues simply that it would not be unduly burdensome to produce the documents. Plaintiff states that it has "agreed that there is no need" for the witnesses to produce pleadings, deposition transcripts, communications between attorneys representing Liss and the Liss Firm that relate to Liss and the Liss Firm's representation, and the documents that relate to that representation. (Pl.'s Resp. 18.) Plaintiff also contends that because "most, if not all, of the documents fall within the crime-fraud exception," the creation of an extensive privilege log will be unnecessary. (*Id.*)

Even if Liss and the Liss Firm were required to create a privilege log in responding to the subpoenas, as the court suspects they will be, while such a task may be inconvenient or burdensome, the court is unpersuaded that sorting through even six feet of documents constitutes an *undue* burden. *See Ghandi v. Police Dep't of Detroit*, 74 F.R.D. 115, 124 (E.D. Mich. 1977) (time consumption alone insufficient to justify quashing subpoena to produce documents); *see also United States v. Dionisio*, 410 U.S. 1, 9-10 (1973) (quoting *Blair v. United States*, 250 U.S. 273, 281 (1919)) ("[W]hile the duty [to comply with a grand jury subpoena] may be 'onerous' at times, it is 'necessary to the administration of justice.'"). Even if Defendant is "sick, destitute, and uncollectible," Plaintiff is entitled to pursue an action to judgment if it believes it can prove that she defrauded Plaintiff. Plaintiff's subpoenas, while overbroad (see discussion, *infra*) will be reasonably calculated to lead to the discovery of admissible evidence related to that fraud upon revision consistent with this opinion. Because Liss and the Liss Firm have failed to demonstrate any burden beyond the typical hassles of

discovery, the court declines their invitation to modify or quash the subpoenas on that ground.

## C. Scope of Subpoena

Liss and the Liss Firm next argue that the subpoenas are overbroad, and that the attorney-client privilege applies to many of the requested documents, thereby necessitating the creation of a privilege log.

### 1. Breadth

The court agrees with the third-party witnesses that the subpoenas are overbroad. A subpoena is overbroad if it is not reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). While the subpoenas as currently worded would lead to the discovery of admissible evidence, they are not sufficiently tailored so as to avoid sweeping in a host of irrelevant, privileged, and otherwise inadmissible documents, and therefore are too broad. Plaintiff itself admits that certain classes of documents should be "carve[d] out" from the subpoenas. (Pl.'s Resp. 18; Tr. 50:18-52:11.) In addition, as the court noted at the September 1 hearing, the subpoenas would inappropriately sweep in Liss and the Liss Firm's communications with their attorneys from Miller, Canfield, Paddock & Stone, since they seek "all documents" relating to broad subject matters without appropriate qualification.

Because the subpoenas are very broad, the court finds that Plaintiff must submit to the court a stipulated or proposed order modifying the subpoenas. In drafting the proposed order, Plaintiff should bear in mind that the subpoenas must be reasonably calculated to lead to the discovery of admissible evidence in this action against Defendant. If Plaintiff seeks evidence that would only be admissible in a proceeding

against the third-party witnesses, then Plaintiff would be expected to first move the court under Rule 15 to add the third-party witnesses as defendants before such discovery would be appropriate.

*2. Privilege and Exception*

In the June 4, 2010 Order, the court determined that the crime-fraud exception to the attorney-client privilege applied to the documents at issue in the motions to compel then pending before the court. (6/4/10 Order 6-9.) Because there is still "a reasonable basis to (1) suspect the perpetration or attempted perpetration of a crime or fraud and (2) that the communications were in furtherance thereof," *Paasche*, 525 N.W.2d at 917, the court need not repeat here the analysis conducted in that order as to why the crime-fraud exception applies to at least some of the communications between Liss and the Liss Firm, as attorneys, and Deanna Hawkins, as the client. (*See* 6/4/10 Order 6-9.)[2] However, some elaboration of that analysis is necessary to determine the metes and bounds of the operation of the privilege and exception in this case.

Although the fact that the crime-fraud exception applies to some facts of this case is not at issue, the third-party witnesses argue that the exception applies only to those communications made with respect to future wrongdoing, and do not apply to

---

[2] Plaintiff claimed that the crime-fraud exception applied only with respect to the documents responsive to the Liss Firm's subpoena at issue in the June 4, 2010 Order, and not with respect to its motion to compel Liss. (6/4/10 Order 6.) Plaintiff now claims that the crime-fraud exception applies equally to any attorney-client privilege claimed by Liss with respect to communications between Liss and Defendant. Because the facts that led the court to find that the crime-fraud exception applied to the Liss Firm's communications with Defendant are equally applicable to communications between Liss and Defendant, the court finds the exception applies with equal force to those communications.

9

communications regarding past wrongdoing. In response, Plaintiff argues that, because concealment is a part of the fraud, the fraud should be viewed as ongoing, and therefore the exception should allow for discovery of the allegedly privileged documents.

As noted briefly above, the rationale behind the crime-fraud exception is derived from the ultimate rationale behind the attorney-client privilege, which balances the societal interest in the truth-seeking function of the courts with the societal interest in open communication between an attorney and his client. While the common law, Michigan courts, and federal courts have determined that the truth-seeking function of the courts may be impeded where confidential communications between attorney and client for the purpose of representation are involved, the benefit of that protection is outweighed in cases where those confidential communications are used to further a criminal or fraudulent purpose. Thus, the distinction between the application of the exception in past and future cases of wrongdoing is—in general—useful because society favors frank communication where the client comes to an attorney seeking advice on some past act, but will not offer protection where the client seeks to utilize the attorney to improve his chances of success at some future crime. The Michigan Court of Appeals in *Paasche*, and the United States Supreme Court in *Zolin*, have adopted this past-future distinction because it serves to distinguish cases where a client commits some wrong and seeks counsel in the process of remedying the wrong from those where a client seeks counsel for the purpose of committing some future wrong.

This case does not fit neatly into either one of those two paradigms. Although Plaintiff has thus far not added the third-party witnesses as defendants in this action, its filings in this court implicate the witnesses in a scheme to defraud Plaintiff. Because the

10

witnesses are an attorney and a firm of attorneys capable of entering into an attorney-client relationship with Defendant, this case is not one where a client seeks counsel either before or after some wrongdoing; the facts do not indicate that Defendant engaged in some past fraud, and then sought out the witnesses for legal advice regarding that fraud.[3] Rather, it is a case where the facts presented to the court thus far are consistent with several possible scenarios: the witnesses may have been partners in the fraud, the witnesses may have taken steps to conceal the fraud after it was completed, or Defendant may have used the witnesses unwittingly to perpetrate her fraud.

In any of these scenarios, the documents would not be protected by the attorney-client privilege—but the reasons for the evisceration of the protection differ in each case. If Liss and the Liss Firm were partners in Defendant's fraud, then the attorney-client privilege never applied to their communications as of the beginning of that partnership because it only "attaches to communications made by a client to his or her attorney *acting as a legal adviser and made for the purpose of obtaining legal advice on some right or obligation.*" See *Waclawski*, 780 N.W.2d at 359 (emphasis added). A person's communication to a partner in a fraudulent scheme is not made for the purpose of obtaining legal advice on some right or obligation, even if that partner happens to be an attorney.

If instead Defendant had completed her fraud, and then consulted Liss and the Liss Firm, who aided in concealing it, the fact that the fraud "was in the past" could not

---

[3] The factual setting of the pending subpoenas considered here thus differs from that surrounding Plaintiff's subpoena of Dean Greenblatt, who was hired to defend against Plaintiff's allegations of fraud.

11

save the witnesses from the crime-fraud exception. Whether construed as part of the Defendant's initial fraud or as a distinct, subsequent fraud, the active concealment of a fraud is not protected by the attorney-client privilege. *See In re Sealed Case*, 754 F.2d 395, 402 (D.C. Cir. 1985); *In re John Doe Corp.*, 675 F.2d 482, 491-92 (2d Cir. 1982); *United States v. Skeddle*, 989 F. Supp. 890, 904 (N.D. Ohio 1997). In defending Defendant against a fraud charge, an attorney would have been permitted to advise Defendant about her "right or obligation" in his role as attorney. He would not, however, have been permitted to aid Defendant in concealing a fraudulent scheme, even if it were in the past. Here, Liss and the Liss Firm provided legal counsel to Defendant for the purpose of obtaining and continuing to receive insurance benefits, and not for the purpose of defending against a possible fraud charge.[4] The past-future distinction is therefore of no use in this factual setting.

Finally, even if the witnesses were unwitting dupes of the Defendant in perpetrating a fraud, their communications would not be protected for the reasons explained in the June 4, 2010 Order, namely because those communications would be

---

[4] This distinction accounts for any apparent differences between the analysis of the application of the crime-fraud exception as it applies to the Liss and the Liss Firm subpoenas and the analysis of the exception as it applies to the Greenblatt subpoena, which is discussed in a separate opinion. The factual setting of this case is necessarily murky, as this case is still in discovery. What is clear, however, is that Liss and the Liss Firm represented Defendant in connection with her attendant care claims, and not in defense of this lawsuit, as Greenblatt did. Therefore, the court can conclude here that under any theory of the case, Liss and the Liss Firm's communications would not be privileged as of the date the fraud began. By contrast, in resolving the motions surrounding the Greenblatt subpoena, different theories of the case, if substantiated, may lead to different conclusions regarding the application of the privilege and the exception. The client's privilege with respect to communications in defense of this fraud action cannot under present assumptions be avoided.

in furtherance of Defendant's fraud and therefore would relate to some future wrongdoing (that is, "future" with respect to the time of the communication).

Insofar as the witnesses argue the privilege applies (and the exception does not) to confidential communications between the witnesses and *their* attorneys in defending a possible fraud suit for any alleged past wrongdoing by the witnesses, they are correct. Of course, a client may not protect otherwise unprotected facts merely by passing them to his attorney. *Reed Dairy Farm v. Consumers Power Co.*, 576 N.W.2d 709, 712 (Mich. Ct. App. 1998); *see Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981).

In sum, Michigan and federal courts have used the crime-fraud exception to define the uses of the attorney-client relationship which are unacceptable, and active concealment of fraud, as opposed to advice on a defendant's rights as to some past fraud, is one such unacceptable use. Thus, any communications between the witnesses and Defendant made during their representation of Defendant and for the purpose of that representation are protected. If communications were made in furtherance of a fraud, however, those communications are not protected.

Further complicating this factual setting, however, is that the record is suggestive of a finding that Defendant at first sought the witnesses' counsel to legally file a legitimate claim, and that sometime later those claims became fraudulent. Because the claims may have transformed from legitimate ones to fraudulent ones, the exception applies only as of the time the fraud began.

Since Plaintiff seeks to use the crime-fraud exception for discovering materials that are purportedly protected by the attorney-client privilege, it bears the burden of

13

making a prima facie showing of a crime or fraud.[5] *See Haines v. Liggett Group Inc.*, 975 F.2d 81, 95 (3d Cir. 1992); *In re Antitrust Grand Jury*, 805 F.2d 155, 165 (6th Cir. 1986); *see also United States v. Zolin*, 491 U.S. 554, 563 n.7 (1989). The purportedly privileged materials may themselves be used to determine the existence of a crime or fraud through *in camera* inspection. *Zolin*, 491 U.S. at 572; *cf. Bourjaily v. United States*, 483 U.S. 171, 180-81 (1987) (holding bootstrapping permissible in determining the applicability of the coconspirator exception to the hearsay rule). In the June 4, 2010 Order, this court found that the exception applied generally in this case, but did not determine the boundaries of the communications to which it applied. Plaintiff has

---

[5] As explained above, in diversity suits such as this one federal courts apply state privilege law according to Rule 501. The existence of a crime-fraud exception is, without a doubt, a part of Michigan's privilege law. The question then arises, however, of whether the showing necessary to for the court to find the crime-fraud exception applies to a set of facts is a part of privilege law, requiring this court to apply the state standard, or whether instead it is a matter of federal procedural law, requiring the federal standard to be applied. In fact, Michigan and federal courts differ on the standard that must be met to find a crime or fraud. Michigan law instructs that there must only be a "reasonable basis to . . . *suspect* the perpetration or attempted perpetration of a crime or fraud," *Paasche*, 525 N.W.2d at 918 (emphasis added), while the federal standard is that of a "prima facie case," *Clark v. United States,* 289 U.S. 1, 14 (1933); *see Zolin*, 491 U.S. at 563 n.7 (noting that the prima facie case standard has led to confusion but declining to clarify it). In the Sixth Circuit, a prima facie showing is "*more than a strong suspicion* that a crime was committed . . . but it need not be as strong as that needed to effect an arrest or secure an indictment." *In re Antitrust Grand Jury*, 805 F.2d 155, 165 (6th Cir. 1986) (emphasis added) (citation omitted). The federal standard of "more than a strong suspicion" in this circuit is therefore somewhat higher than the Michigan standard of a "reasonable basis to suspect."

Because *Zolin* laid down the procedure to be followed by a federal district court under Rule 104(a) in determining whether the crime-fraud exception applies in a particular case, and because Rule 104(a) applies to determinations under Rule 501, the court finds the better view is that the federal standard should be used in diversity actions to determine whether the requisite crime or fraud showing has been made, because that determination is procedural. In any case, because the federal standard is more stringent, any showing sufficient to pass the "more than a strong suspicion" standard is also sufficient to pass the "reasonable basis to suspect" standard.

14

presented evidence that suggests that Fecchia Hawkins had not been living with Defendant since she was 19, in 2003, (Pl.'s Resp. 5; 6/4/10 Order 9), that Plaintiff continued to pay AC Benefits through August 2005, (Pl.'s Resp. 4), and that the third-party witnesses knew Defendant had moved to Texas at least as early as August 12, 2005, (Pl.'s Mot. 9-10). Therefore, communications that occurred as of the date in 2003 when Fecchia no longer lived with Defendant and later are subject to the crime-fraud exception. Plaintiff may seek discovery under the exception for earlier communications if it can make the necessary prima facie showing that the fraud was ongoing earlier than 2003.

In complying with any revised subpoena, the third-party witnesses may prepare a privilege log and the court will inspect the allegedly protected documents *in camera* to determine whether the privilege or exception applies.

### D. Motion to File Deposition Under Seal

Subsequent to the September 1 hearing, Plaintiff moved to file Liss's August 27, 2010 deposition under seal. Plaintiff argues that in his deposition, Liss directly contradicts the documentary evidence produced during discovery, including that related to the AC Calendars, Defendant's guardianship, the termination of representation of Defendant, and Liss's referral to Greenblatt. In response, third-party witnesses contend that Eastern District of Michigan Local Rule 26.2(a) precludes filing the deposition under seal, that the motion is a pretextual attempt by Plaintiff to reargue their arguments from the hearing, and that the deposition testimony is not "'highly relevant' to his alleged 'participation in the fraud.'"

In relevant part, the local rules provide:

15

> A party or other person may not file discovery material specified in Fed. R. Civ. P. 5(d)(1) and certificates of service for such discovery material except:
>
> (1) when it provides factual support for a motion, response or reply. The party or other person relying on the material must file only the germane portion of it as an exhibit or attachment to the motion, response, or reply.
> . . .
> (3) on order of the court.

E.D. Mich. LR 26.2(a). A deposition transcript is specified in Federal Rule of Civil Procedure 5(d)(1). As Liss and the Liss Firm correctly observe, Plaintiff may not file the transcript pursuant to Local Rule 26.2(a)(1), because the motion to quash has been fully briefed. Plaintiff therefore presumably seeks to file the transcript under Local Rule 26.2(a)(3). Because the deposition of Liss was not taken until after the deadline for Liss and the Liss Firm to file a response to the motion to quash, the court is inclined to permit the deposition to be filed if it in fact would provide support for Plaintiff's response.

Because Liss's averments shed light upon what Liss and the Liss Firm knew and when they knew it, the court finds that Liss's deposition transcript may be of utility in determining whether certain documents should be subject to production upon Plaintiff's submission of revised subpoenas.[6] Therefore, the court grants the motion to file the deposition transcript under seal.

## IV. CONCLUSION

---

[6] While Liss and the Liss Firm's knowledge of Defendant's fraud, if any, is irrelevant as to the application of the crime-fraud exception with respect to the operation of the privilege between them and Defendant, *Paasche*, 525 N.W.2d at 918 n.6, the existence of that knowledge is relevant to a determination of whether certain communications were made for the purpose of seeking legal advice, and therefore may ultimately bear upon whether certain communications are privileged at all.

16

Accordingly, IT IS ORDERED that third-party witnesses' "Motion to Quash" [Dkt. # 105] is GRANTED IN PART and DENIED IN PART.  It is GRANTED in that the subpoenas as currently drafted are overbroad and likely to reach privileged material and therefore must be quashed.  It is DENIED in that Plaintiff is given leave to submit a proposed order to the court modifying the subpoenas such that they are reasonably calculated to lead to the discovery of admissible evidence in this action, that they avoid privileged material, and that they exclude certain documents that the parties have agreed should not be within the reach of the subpoenas.  Plaintiff must submit this proposed order to the court by **March 3, 2011**.  The proposed order should likely limit, for example, the time periods of the documents that are sought.  Liss and the Liss Firm may then file objections by **March 10, 2011**.  Any objections should be narrowly tailored toward specific documents or types of documents sought, and should not merely recite the arguments already considered in this opinion.  In particular, the witnesses should not object to documents that may be entered into a privilege log.

IT IS FURTHER ORDERED that Plaintiff's "Motion to File August 27, 2010 Deposition Transcript of Third-Party Arthur Liss Under Seal" [Dkt. # 124] is GRANTED.

                                                            s/Robert H. Cleland
                                                            ROBERT H. CLELAND
                                                            UNITED STATES DISTRICT JUDGE

Dated:  February 10, 2011


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 10, 2011, by electronic and/or ordinary mail.

        <u>s/Lisa G. Wagner</u>
        Case Manager and Deputy Clerk
        (313) 234-5522